UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

ANNETTE M. CONTO,           )
                            )
      Plaintiff,           )          Civil No. 5:25-cv-00320-GFVT
                            )
v.                        )
                            )          **MEMORANDUM OPINION**
MK VENTURES, LLC,          )                    **&**
                            )            **ORDER**
      Defendant.         )

*** *** *** ***

This matter is before the Court upon defendant MK Ventures, LLC's motion to dismiss the complaint filed by plaintiff Annette Conto. *See* [R. 5.] The motion is fully briefed, *see* [R. 17, 18], and ripe for decision. For the reasons explained below, the Defendant's Motion to Dismiss [R. 5] is **GRANTED**.

**I**

This action arises from MK Ventures's efforts in July and August 2025 to collect approximately $5,000.00 in contractual liquidated damages assertedly incurred by Conto for her early termination of a lease of residential real property in Georgetown, Kentucky. *See* [R. 1 at 2; R. 1-4 at 4-5; R. 1-5 at 12, 14-15; R. 1-6 at 12-45.] In response to MK Ventures's pre-litigation correspondence requesting payment, Conto sent a flurry of a dozen letters demanding a "verified" accounting from MK Ventures, assertedly based upon the Uniform Commercial Code and regulations promulgated by the Internal Revenue Service. Conto further asserted that MK Ventures's failure to comply with her demands violated myriad state and federal statutes, including but not limited to those related to commercial transactions, lending disclosures, collection efforts, and credit reporting. *See* [R. 1-4 at 7-8, 10-11, 13, 15-16, 18-19, 21, 23-24;

R. 1-5 at 2-4, 6, 20, 22-24; R. 1-6 at 2-3.]  During this period Conto also filed in Kentucky and Tennessee one or more UCC-1 financing statements related to MK Ventures's requests for payment.  *See* [R. 1-5 at 8-11, 17-18; R. 1-6 at 5-6, 8-10.]

Conto filed this suit on September 11, 2025.  *See* [R. 1.]  Conto noted her demands for an accounting from MK Ventures and asserted generally that its two payment letters constituted the "continued assertion of claims without proof [which] clouds Plaintiffs title, credit standing, and property rights."  [*Id*. at 4.]  Conto asserts single-sentence claims:

(1)   In Count I for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e;
(2)   In Count II for violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(a);
(3)   In Count III for breach of the duty to provide an accounting in Ky. Rev. Stat. 355.9-210;
(4)   In Count IV for fraud and/or misrepresentation;
(5)   In Count V for to "quiet title" pursuant to Ky. Rev. Stat. 411.120; and
(6)   In Count VI for declaratory judgment.

*See* [R. 1 at 4-5.][1]  Conto seeks more than $140,000.00 in damages as well as hourly compensation for services as "Attorney-in-Fact for herself."  *See* [*id*. at 5-6.]

## II

### A

MK Ventures first seeks dismissal based upon its characterization of Conto's claims as "sovereign citizen" arguments which, it contends, should be dismissed for lack of subject matter jurisdiction pursuant to *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (*per curiam*).  *See*

---

[1]  At the outset of her complaint Conto makes a passing reference to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1666d.  *See id*. at 2.  However, she does not assert a claim under TILA in the body of her complaint or support such a claim with necessary factual allegations.  Even if Conto intended to assert such a claim, it would be subject to dismissal under Rules 8 and 12 of the Federal Rules of Civil Procedure.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And, as explained below, she may not flesh out a claim for the first time in response to a motion to dismiss her complaint.

2

[R. 5 at 1-4, 7-8.]  *Apple* permits dismissal pursuant to Rule 12(b)(1) "when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion."  *Apple*, 183 F.3d at 479.

Defendant candidly acknowledges, however, that the Sixth Circuit has cautioned that "most complaints will not be so clearly insufficient as to warrant dismissal under Rule 12(b)(1), but instead should be handled under Rule 12(b)(6) …"  *Id*. at 480.  After all, *sua sponte* dismissal of a federal statutory or constitutional claim is inappropriate if there is "*any* legal substance to the position the plaintiff is presenting."  *In re Bendectin Litig.*, 857 F.2d 290, 300 (6th Cir. 1988) (*citing* 13B C. Wright, A. Miller & E. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3564, at 67 (2d ed. 1984)) (cleaned up).  *See also Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 279 (1977) (noting that "where an action is brought under [§] 1331 … jurisdiction is sufficiently established by allegation of a claim under the Constitution or federal statutes, unless it 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction.'") (citation omitted).

Given the narrow lane to dismissal afforded by *Apple*, one might expect MK Ventures to explain with particularity both the specific claims which it finds implausible and the basis for that belief.  It does neither.  Instead, it concludes two pages of generic argument and citation denigrating sovereign citizens and their misunderstanding of the law with a single wishful sentence: "[t]o the extent the Court concludes that Conto is asserting sovereign citizen theories and arguments, then the Court should summarily dismiss them."  *See* [R. 5 at 11.]  That's a particularly unexpected omission given MK Ventures's earlier admonition that it is not the Court's role to "supply missing facts or unpled allegations [or] create a claim for the pro se plaintiff …"  *Id*. at 6 (*citing Brown v. Cracker Barrel Rest.*, 22 F. App'x 577, 578 (6th Cir.

3

2001)).  If the Court should not act as an advocate for a *pro se* plaintiff, it certainly should not do so for a party represented by counsel learned in the law.  *See Yeomalakis v. F.D.I.C.*, 562 F.3d 56, 61 (1st Cir. 2009) ("It is not our job, especially in a counseled civil case, to create arguments for someone who has not made them or to assemble them from assorted hints and references scattered throughout the brief.").  Defendant having failed to make any meaningful argument in support of this basis for dismissal, the Court declines to undertake the effort for it.  It is, instead, forfeited.  *See Lipman v. Budish*, 974 F.3d 726, 749 (6th Cir. 2020); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "… issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citation omitted).

**B**

MK Ventures alternatively seeks dismissal of the complaint for failure to state a claim upon which relief may be granted.  *See* [R. 5 at 7, 11-15.]  A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the plaintiff's complaint.  *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014).  When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint.  *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014).  Because the plaintiff here is proceeding without the benefit of an attorney, the Court reads her complaint to include all fairly and reasonably inferred claims.  *Davis v. Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013).  But the complaint must be dismissed if it undoubtedly fails to allege facts sufficient to state a facially-plausible claim.  *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012).  A complaint may also be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## C

The Court begins with Count I, in which Conto asserts that MK Ventures violated the FDCPA by "assert[ing a] debt and threaten[ing] collection without [providing a] verified accounting."  *See* [R. 1 at 4]  But Conto did not allege facts indicating that MK Ventures was a "business the principal purpose of which is the collection of any debts" or who "regularly collects or attempts to collect" debts owed to another.  *See* 15 U.S.C. § 1692a(6).  She therefore did not plausibly allege that it was a "debt collector" covered by the FDCPA, warranting dismissal of this claim.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480-81 (6th Cir. 2020) (noting that the FDCPA's "general debt-collector definition ties a defendant's 'debt collector' status not to what the defendant specifically did in a given case, but to what the defendant generally does" and affirming the dismissal of a complaint that "contains almost no well-pleaded allegations about the principal business or regular activities" of the defendants). *See also Memmelaar v. JPMorgan Chase Bank, N.A.*, No. 1:23-CV-476, 2023 WL 9118645, at *3 (W.D. Mich. Dec. 18, 2023) (noting that a bank collecting its own debt is not a debt collector

under the Act), *report and recommendation adopted as modified*, No. 1:23-CV-476, 2024 WL 81277 (W.D. Mich. Jan. 8, 2024).

Furthermore, Conto claimed violation of a specific FDCPA provision which includes a list of false or misleading representations that a debt collector is *prohibited* from making. *See* 15 U.S.C. § 1692e. Nothing in that section requires a debt collector to take any *affirmative* action, such as providing the consumer with the accounting demanded by Conto here. *Cf. Duell Fam. Tr. v. Ford*, No. 24-CV-316 JLS (VET), 2024 WL 1318878, at *7-8 (S.D. Cal. Mar. 27, 2024); *Clauser v. World's Foremost Bank*, No. 3:17-CV-0159, 2018 WL 5660751, at *8 (M.D. Pa. Mar. 30, 2018), *report and recommendation adopted*, No. 3:17-CV-159, 2018 WL 5660741 (M.D. Pa. May 8, 2018) (dismissing FDCPA claim because "nothing in the FDCPA requires Defendants to validate the debt by providing a 'certified accounting[.]'").

Section 1692g(b), a provision that Conto did not invoke but which is closer to the basis for her claim, provides that "[i]f the consumer notifies the debt collector in writing" within thirty days of receiving "communication ... in connection with the collection of any debt," that she disputes any portion of the debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt ..." In addition to the reasons above, that subsection still wouldn't have helped Conto:

> Verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt. There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.

*Haddad v. Alexander, Zelmanski, Danner & Fioritto, PLLC*, 758 F.3d 777, 783 (6th Cir. 2014) (cleaned up; *quoting Chaudhry v. Gallerizzo*, 174 F.3d 394 (4th Cir. 1999)). Defendant's alleged

6

failure to provide Conto with a "verified accounting" therefore did not violate the FDCPA, warranting dismissal.

D

In Count II, Conto asserts that MK Ventures violated the FCRA by "threaten[ing] to report unverifiable debt to credit bureaus." *See* [R. 1 at 4 (*citing* 15 U.S.C. § 1681s-2(a))]. The subsection referenced by Conto prohibits a person or entity from knowingly furnishing information to a credit reporting agency ("CRA") that it knows to be inaccurate or which it confirms is inaccurate after notification by a consumer. *See* Section 1681s-2(A), (B). Conto's claim under this provision fails for three reasons. First, by its terms the law does not relate to *threatening* communications sent by a creditor *to a debtor*, it relates to *inaccurate* information sent by a creditor *to a CRA*. Second, Conto does not allege that MK Ventures's information was inaccurate only that it was, to her mind, "unverifi[ed]." Third, and most fundamentally, Conto lacks standing to assert a claimed violation of this provision. *See Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012) ("§ 1681s–2(c) expressly precludes consumers from enforcing the requirement that furnishers, under § 1681s–2(a), initially provide complete and accurate consumer information to a CRA.") *Id*. at 615 (citing §§ 1681s–2(c), 1681s–2(d))

Perhaps recognizing that her claim under Section 1681s-2(a) is not viable, in her response Conto pivots to an entirely different claim: "Defendant furnished negative information to credit reporting agencies after being placed on notice of dispute and failed to investigate as required by 15 U.S.C. § 1681s-2(b)." [R. 18 at 4]. This gambit fails for two reasons. First, a "plaintiff[] cannot amend [her] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). Second, a reporting creditor's obligations under § 1681s-2(b) are only

7

triggered after "notice [received] pursuant to section 1681i(a)(2)." Such notice must be sent to the furnisher *by the CRA* after a consumer sends a notice to the CRA disputing information. *See* 15 U.S.C. § 1681i(a)(1)(A) (". . . if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer *and the consumer notifies the agency directly* [] of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation . . . ") (emphasis added). Conto's claim, predicated only upon her statement to MK Ventures, necessarily fails to state a claim. *See Twumasi-Ankrah v. Checkr, Inc.*, 954 F.3d 938, 943 (6th Cir. 2020) ("§ 1681s-2(b) allows a consumer to sue a data furnisher if the furnisher provides 'incomplete or inaccurate' information to a CRA and then refuses to 'delete' or 'modify' that information in response to a consumer complaint."). Of course, "[c]onsumers must file a dispute with a consumer reporting agency to trigger the furnisher's duty to investigate under § 1681s-2(b)." *Scott v. First S. Nat'l Bank*, 936 F.3d 509, 517 (6th Cir. 2019) (*affirming Scott*, No. 5:16-CV-281-KKC, 2018 WL 4568594, at *4 (E.D. Ky. Sept. 24, 2018) ("A furnisher of credit information, such as the bank, has no responsibility to investigate a credit dispute until after it receives notice from a consumer reporting agency. Put succinctly, notification from a consumer is not enough to satisfy the requirements of the statute.") (cleaned up)). *See also Lattimore v. Bank of Am., N.A.*, No. 2:25-CV-127-DCR, 2025 WL 2445348, at *2 (E.D. Ky. Aug. 25, 2025).

**E**

In Count III, Conto asserts that because MK Ventures did not respond to her demand for an accounting under Ky. Rev. Stat. 355.9-210, it forfeited its right to payment. *See* [R. 1 at 4] The applicable statute provides that:

> (2)   … a secured party … shall comply with a request within fourteen (14) days after receipt:

8

(a)    In the case of a request for an accounting, by signing and sending to the debtor an accounting; …

Ky. Rev. Stat. 355.9-210(2).  MK Ventures responds that "[t]his statutory provision is not applicable to a residential lease agreement."; instead, it applies "*to a secured party regarding secured obligations.*"  [R. 5 at 13 (emphasis in original)].  The Court agrees.  Kentucky law specifies six categories of persons who constitute "secured parties," including primarily those in whose favor a security interest has been created.  *See* Ky. Rev. Stat. 355.9-102(1)(ca).  Conto does not allege in her complaint that her payment obligations under the residential lease are secured by a properly-perfected security interest in favor of the Defendant.  *See* [R. 1].  And nothing in the thirty-page Residential Lease Agreement between the parties or its numerous addenda either creates or refers to any such interest.  *See* [R. 1-6 at 12-45].  None of the provisions cited by Conto, including Ky. Rev. Stat. 355.9-513 and 355.9-625, apply to MK Ventures because it is not a "secured party" within the meaning of the UCC.  The inapplicability of Article Nine also dooms Count VI, in which Conto asserts that because MK Ventures did not respond to her demand for a "certified" accounting, it has "no valid lien or enforceable claim" to payment and therefore "must terminate all asserted interests under UCC § 9-513."  *See* [R. 1 at 5].  These claims necessarily fail to state a claim and will be dismissed.

## F

In Count IV, Conto asserts that "[b]y asserting obligations without evidence of fiscal harm, [MK Ventures] knowingly misrepresented facts, clouding Plaintiff's financial title."  This, she contends, amounted to fraud and misrepresentation.  *See* [R. 1 at 4.]  In its motion to dismiss, MK Ventures notes the brief and conclusory nature of this statement and seeks dismissal

9

pursuant to Fed. R. Civ. P. 9(a), which requires a plaintiff "alleging fraud or mistake [to] state with particularity the circumstances constituting fraud or mistake." *See* [R. 5 at 14-15.]

In Count V, Conto invokes Ky. Rev. Stat. 411.120 and Tenn. Code § 29-27-101 in an effort "to quiet title and interest in her lease-related collateral, asserting that Defendant's claims constitute a cloud *on property rights and credit*." *See* [R. 1 at 5 (emphasis added).] As Conto noted in her complaint, she was a lessee of real property, not its beneficial or title owner. In its motion MK Ventures notes, among other things, that "Kentucky's quiet title statute, KRS 411.120, requires a person to have both the legal title and possession of land to prosecute suit against any other person setting up a claim to it. She fails to allege that she holds either." *See* [R. 5 at 15.]

Conto's response does not even mention her claims for fraud or misrepresentation or to quiet title, let alone respond to MK Ventures's arguments seeking their dismissal. *See* [R. 18.] The Defendant notes the omission in its reply, and also seeks dismissal on that ground. *See* [R. 17 at 5.] The Court again agrees: Conto having failed to respond to MK Ventures's Rule 12(b)(6) grounds for dismissal of these claims, she has forfeited any opposition to the dismissal of them: "a plaintiff generally concedes a defense when they fail to respond to the defendant's argument." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019) (*citing Humphrey v. U.S. Att'y Gen.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("… where, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived.")). *See also Heyward v. Cooper*, 88 F.4th 648, 654-56 (6th Cir. 2023) (finding forfeiture applies where "[a] plaintiff filed a response to a defendant's motion to dismiss but only included some of its arguments."); *Paul v. Whitley Cnty. Det. Ctr.*, 712 F. Supp. 3d 907, 921-22 & n.2 (E.D. Ky. 2024) (collecting cases),

10

*aff'd sub nom. Paul v. Whitley Cnty., KY, Det. Ctr.*, No. 24-5142, 2024 WL 4362260 (6th Cir. Sept. 30, 2024) ("Generally, at the summary judgment stage, the non-moving party can forfeit an argument if they fail to respond to the moving party's arguments.") (*citing Palma v. Johns*, 27 F.4th 419, 429 n.1 (6th Cir. 2022)).  The Court will therefore grant MK Ventures's motion to dismiss these remaining claims.  Having concluded that the complaint fails to state any viable claims, the Court will dismiss it with prejudice.

## G

Finally, before an appeal is taken a district court may certify that any appeal would not be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).  Such a certification is appropriate here.  When assessing whether an action is taken in good faith, the inquiry is an objective one.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  In other words, the question is not whether a party would have an improper purpose for taking an appeal, but whether an appeal would seek appellate review of any non-frivolous issue.  *Id*.  An issue is frivolous  if it "lacks an arguable basis either in law or in fact."  *Norton v. Barker*, 2022 WL 837976, at *2 (6th Cir. Feb. 16, 2022) (*quoting Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).  *See also Carroll v. Gross*, 984 F.2d 392, 393 (11th Cir. 1993) (concluding that such a certification is warranted if an appeal's "legal theories are indisputably meritless.") (citations omitted).  Here, for the reasons stated above, reasonable jurists could not differ in concluding that Conto's complaint fails to present any viable claim for relief.  The Court will therefore certify that any appeal is not taken in good faith.

## III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.      MK Ventures's motion to dismiss, **[R. 5]**, is **GRANTED**.

11

2.         Conto's complaint, **[R. 1]**, is **DISMISSED** with prejudice.

3.         The Court **CERTIFIES** that any appeal would not be taken in good faith.

4.         The Court will enter an appropriate judgment.

5.         This matter is **STRICKEN** from the docket.

This the 30th day of March, 2026.

Gregory F. Van Tatenhove
United States District Judge